COE, Commissioner of Patents, v. UNITED STATES ex rel. REMINGTON RAND, Inc.

No. 6607.

United States Court of Appeals for the District of Columbia.

Decided April 27, 1936.

R. F. Whitehead, of Washington, D. C., for appellant.

Charles M. Thomas, of Washington, D. C., and S. E. Darby, Jr., of New York City, for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

## VAN ORSDEL, Associate Justice.

The Commissioner of Patents appeals from an order of the Supreme Court of the District of Columbia granting appellee's petition for a writ of mandamus directing the Commissioner to enter and consider a certain amendment filed on September 20, 1934 to a pending application for patent of one Lasker, serial No. 681,333, filed December 18, 1923 and assigned to the appellee, Remington Rand, Inc.

It appears that, during the period in which the Lasker application was pending in the Patent Office, eight different official actions were had, in five of which new art was cited by the Primary Examiner. It may be assumed that the delay in the consideration of this case by the Patent Office was due to these numerous actions.

After his application was allowed, applicant copied claims from a patent which had been issued to Lake and Storey on September 9, 1930. The Primary Examiner held that Lasker's application supported certain of the claims, and accordingly, by direction of the Commissioner, an interference was declared involving the Lake and Storey patent. Lake and Storey moved to dissolve the interference, urging the failure of Lasker's application to support the interference issues. The Examiner of Interferences granted the motion to dissolve, thereby reversing the decision of the Primary Examiner. Lasker then appealed to the Board of Appeals, which affirmed the decision of the Examiner of Interferences, and dissolved the interference.

This operated to restore the Lasker application to the Primary Examiner, where its prosecution was resumed. Upon further hearing the Primary Examiner rejected all claims involved in the interference, including the claims which had been previously allowed to Lasker. Lasker promptly filed an amendment to his application, traversing the new ground of rejection. The amendment included not only matter taken from prior art patents, which had been used as cross-references in the Lasker application as filed, but also additional claims tending to avoid the new ground of rejection found by the Examiner.

The Examiner refused to enter and consider the amendment, although the prosecution of the application was still pending; that is, the case had the status of a regularly pending application. Thereafter the Commissioner refused to enter the amendment, and it is urged that, since no appeal lies from his refusal, the remedy is by mandamus to compel him to order the Examiner to enter and consider the amendment.

It will be observed that the rejection by the Primary Examiner was the first rejection of the claims here involved. Under rule 68 of the Rules of Practice, United States Patent Office, "the applicant has a right to amend before or after the first rejection or action, and he may amend as often as the examiner presents new references or reasons for rejection."

In view of the fact that the Primary Examiner's rejection was the first rejection, the amendment amounted merely to a request for a re-examination of the case in the light of this rejection. It was the first opportunity which petitioner had to traverse this rejection.

We think that the right of petitioner to the writ depends upon section 4903, R. S. (35 U.S.C.A. § 51), in connection with section 4909, R.S. (35 U.S.C.A. § 57). Section 4903 provides:

"Whenever, on examination, any claim for a patent is rejected, the commissioner shall notify the applicant thereof, giving him briefly the reasons for such rejection, together with such information and refer-

242

ences as may be useful in judging of the propriety of renewing his application or of altering his specification; and if, after receiving such notice, the applicant persists in his claim for a patent, with or without altering his specifications, the commissioner shall order a reexamination of the case."

 The dissolution of the interference by the Examiner of Interferences, and the affirmance of his decision by the Board of Appeals restored the petitioner to the status of an ex parte applicant for the patent which he was seeking. The case was in this condition when the claims involved were rejected by the Primary Examiner. We must therefore consider the rights of petitioner when this first rejection occurred. He had no right of appeal to the Board of Appeals on this single rejection. There must be a second rejection by the Primary Examiner before the right of appeal can be availed of. Section 4909, R.S. (35 U.S.C.A. § 57), provides:

"Every applicant for a patent or for the reissue of a patent, any of the claims of which may have been twice rejected, and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the board of appeals; having once paid the fee for such appeal."

It is quite apparent that, if the ground for a second rejection be denied, the applicant is deprived of any right of appeal. The action of the Commissioner in refusing to direct the entry of the amendment operated to stop all further proceedings in the Patent Office. It did not amount to a rejection of the application, from which appeal might be taken to the proper court, but blocked by this method the right of appeal to the Board of Appeals from a second rejection by the Primary Examiner, so that petitioner was deprived of any right of appeal whatever for the determination of his rights. In this view of the case, we think that the Commissioner of Patents exceeded his authority in refusing to direct the entry of the amendment and the further consideration of the case by the Primary Examiner.

The duty of the Commissioner in the premises is a clear statutory requirement, and the performance of that duty is a plain, ministerial act, which cannot be avoided by any claim of discretionary power on his part.

The judgment of the court below is affirmed.

ROBB, Associate Justice, took no part in the decision of this case.