**Gerald Glen BOYDEN, Appellant**

v.

**COMMISSIONER OF PATENTS.**

No. 22238.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1970.

Decided Feb. 18, 1971.

Petition for Rehearing Denied March 15, 1971.

Leventhal, Circuit Judge, concurred and filed opinion.

Mr. John F. Witherspoon, Arlington, Va., with whom Mr. Edwin R. Hutchinson, Washington, D. C. (both appointed by this Court), was on the brief, for appellant. Mr. Charles A. Wendel, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, also argued for appellant.

Mr. Jere W. Sears, Asst. Solicitor, with whom Mr. S. Wm. Cochran, Solicitor, was on the brief, for appellee. Mr. Joseph Schimmel, Solicitor, at the time the record was filed, and Mr. Lutrelle F. Parker, Washington, D. C., Attorney, also entered appearances for appellee.

Before DANAHER, Senior Circuit Judge, and LEVENTHAL and ROBB, Circuit Judges.

DANAHER, Senior Circuit Judge:

This appellant on April 20, 1967, tendered to the Commissioner an application for a patent which the Patent Office declined to file since the application was not accompanied by the $95 filing fee required by law. Appellant thereupon sought an order in the nature of mandamus to compel the Commissioner to accept and examine his patent application without payment of the statutory filing fee or, alternatively, that he be

awarded damages in the sum of $100,000 with interest and costs. The District Court quite properly allowed [1] the appellant to proceed in forma pauperis upon his showing of indigency. The Commissioner moved to dismiss, alleging lack of jurisdiction over the subject matter and failure to state a claim upon which relief could be granted. Thereafter that motion was granted. We allowed an appeal in forma pauperis and appointed counsel who have here diligently represented this appellant's interests.

35 U.S.C. § 111 provides that an application for patent shall include a specification as prescribed by § 112, a drawing as prescribed by § 113, an oath as prescribed by § 115 and concludes, the "application *must be* signed by the applicant and *accompanied* by the fee required by law." (Emphasis added.)

## I

 None of various grounds for reversal urged upon us requires extended discussion, for we deem to be controlling as a necessary conclusion that appellant had failed to state a claim upon which relief could be granted. The district judge correctly so perceived, and

we are bound to affirm his order of dismissal. It seems clear enough that the "Commissioner *shall* charge" (emphasis ours) the fees as specified in 35 U.S.C. § 41.[2] Note also that 35 U.S.C. § 42 provides that all "patent fees *shall* be paid to the Commissioner who *shall* deposit the same in the Treasury of the United States * * *."[3] (Emphasis added).

 No person has a vested right to a patent, see McClurg v. Kingsland, 42 U.S. (1 Howard) 202, 206, 11 L.Ed. 102 (1843), but is privileged to seek the protected monopoly only upon compliance with the conditions which Congress has imposed. That rule applies to the payment of fees required for the administration of the patent laws just as it demands compliance with other conditions, statutorily imposed. Certainly the powers of Congress in the patent law field are plenary for they stem directly from the Constitution.[4]

## II

But, the appellant argues, granting that Sections 41(a) and 111 are not unconstitutional on their face, the Commissioner's treatment of the appellant's patent application brings it about "that poor

---

1. Despite the inartful pleading, we are satisfied that the appellant showed he was authorized to proceed in the District Court pursuant to 28 U.S.C. § 1915(a), Sikora v. Brenner, 126 U.S.App.D.C. 357, 359, 379 F.2d 134, 136 (1967), and that the court had jurisdiction of the action pursuant to 28 U.S.C. § 1338(a). The Commissioner's action here we take to be final. Cf. Commissioner of Patents v. Whiteley, 71 U.S. (4 Wall.) 522, 533, 18 L.Ed. 335 (1866). See generally, Adkins v. E. I. Du Pont De Nemours & Co., 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948) and the interesting outline in Smith v. Johnston, 109 F.2d 152 (9 Cir. 1940).

2. The appellant has made no contention that he is entitled somehow to financial assistance in complying with the intricate requirements of 35 U.S.C. §§ 112, 113 and 114 to the extent applicable. Compare Leighton v. Coe, 76 U.S.App.D.C. 212, 130 F.2d 841 (1942) where an in forma pauperis applicant sought an allowance for expenses to appear in the district court then reviewing Patent Office

proceedings. We there observed that the court made no such allowance for it had no power under the statutes to do so.

3. "Shall" is the language of command, Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) as Mr. Justice Cardozo observed for a unanimous court. And see the discussion by Mr. Justice Stone in Richbourg Motor Co. v. United States, 281 U.S. 528, 534, 50 S.Ct. 385, 74 L.Ed. 1016 (1930).

We may note in passing that 35 U.S.C. § 145 in authorizing a civil action against the commissioner provides that "[a]ll the expenses of the proceedings *shall* be paid by the applicant." (Emphasis added). See Robertson v. Cooper, 46 F.2d 766, 769 (4 Cir. 1931) and Watson v. Allen, 107 U.S.App.D.C. 25, 274 F.2d 87 (1959).

4. As to other comparable instances see Currin v. Wallace, 306 U.S. 1, 13–14, 59 S.Ct. 379, 83 L.Ed. 441 (1939) and Detroit Bank v. United States, 317 U.S. 329, 337–338, 63 S.Ct. 297, 87 L.Ed. 304 (1943).

people may be cavalierly discriminated against." He accordingly argues that he has been denied the Fourteenth Amendment's assurance of equal protection and the Fifth Amendment's guaranty of due process.[5] He relies upon such cases as Harris v. Harris, 137 U.S.App.D.C. 318, 424 F.2d 806 (1970) and Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891 (1956) as typical and as illustrative of principles [6] which, if here applied, would remedy his situation and would serve "a social need."

 Thus, he asks us to order the Commissioner to proceed with the examination of his application, even though he has not paid the fee prescribed by Congress and although Congress has accorded no authority to the Commissioner to waive the prescribed payment.[7] He asks us, in effect, to *order* the Commissioner to permit him to proceed in the Patent Office just as pursuant to 28 U.S.C. § 1915(a), he has been permitted to proceed in our courts. But that section clearly does not apply to the Patent Office. Its explicit language applies only to the Federal Courts: any court of the United States may authorize in forma pauperis proceedings as to any action "therein."

 We perceive here no constitutional deprivation, no arbitrariness on the part of the Commissioner, and no predi-

cate for the appellant's claims. Accordingly, we decline to enter the order the appellant seeks. Rather, we do say that Congress has granted a privilege, open to all, and has created no requirements which can be said to be unnecessary to what Congress in the exercise of its plenary power deems essential to the effective working of the patent system. Obviously, there are differences in the economic circumstances of our citizenry which exist quite apart from any exercise of the privilege which Congress has conferred. Congress simply has here done nothing to alleviate the consequences of those differences.

This applicant in effect has asked this court to order discrimination in his favor. He asks to be permitted without charge to do what all others must pay for.[8] Thus, where the *law* has not discriminated against him, he would have us say that the Commissioner is bound to discriminate to his advantage.

### III

 To recapitulate, it is apparent that the duty of the Commissioner stems from a clear statutory requirement. There is no grant of discretionary power to him. Of course, if he had such power and had declined to exercise it, a very different question would be presented.[9] Under the circumstances here

---

5. He realizes that the Fifth Amendment does not contain the equal protection clause to be found in the Fourteenth Amendment, applicable to the states, but treats the two concepts as elided, claiming that, basically, discrimination underlies either approach. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L. Ed. 884 (1954); cf. Lee v. Habib, 137 U.S.App.D.C. 403, 413–414, 424 F.2d 891, 901–902 (1970).

6. But in *Harris* we noted the existence of a statutory right to file an action for divorce, and in *Griffin* the court had recognized a constitutional requirement which must be met.

7. Cf. Miller v. United States, 317 U.S. 192, 198, 63 S.Ct. 187, 87 L.Ed. 179 (1942); Douglas v. Green, 327 F.2d 661 (6 Cir. 1964); In re Fullam, 80 U.S.

App.D.C. 273, 152 F.2d 141 (1945). And further compare Lee v. Habib, *supra*, n. 5, 137 U.S.App.D.C. at 416–417, 424 F.2d at 904–905.

8. We doubt that it could effectively be contended that one in appellant's circumstances would be entitled, without fee, to register an automobile in the District of Columbia when all others must pay a registration fee. Again, the Supreme Court has found no such invidious discrimination against an indigent as to render invalid a state law requiring him to provide compulsory liability insurance. See Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L. Ed. 152 (1933).

9. Coe v. United States ex rel. Remington Rand, Inc., 65 App.D.C. 387, 84 F.2d 240 (1936).

presented, mandamus surely is not available [10] to us to the end that we substitute by our order a result for which Congress has made no provision.[11]

This appellant's petition in the respects under consideration must be addressed to the law-making authority.[12] We have given him carefully the only consideration open to us and find ourselves forced to the conclusion that he has failed to state a claim for which relief may be had.[13]

The order of the District Court is

Affirmed.

LEVENTHAL, Circuit Judge (joining and concurring):

I join in Judge Danaher's opinion, adding some observations because they help give me additional perspective for denying petitioner's claim of constitutional right, as an indigent, to process a patent application without payment of the statutory fee.

Equal protection concepts begin with the requirement of a standard that is non-discriminatory; here the statute obviously requires one and all to pay the fee. Constitutional requirements also dictate that in some matters the weak and helpless be relieved of burdens that may be and are applied generally without constitutional hindrance.

Thus the Supreme Court has held that an indigent who is a defendant in a criminal case has the constitutional right to have the state supply him, without payment of fees, counsel and a transcript [1] for which others must pay. In *Harper*,[2] invalidating the poll tax, the Court said there is close scrutiny and careful confinement of classifications that affect "fundamental rights and liberties," that wealth "is not germane" to voting and the right to vote is "too precious, too fundamental" to be conditioned on a fee. *Harper* indicates that the area of "fundamental rights" is not limited by the assumptions of the past. In *Sniadach* [3] the Court invalidated pre-judgment wage garnishments. The *Boddie* case involves the right of an indigent to access to civil courts for a divorce without payment of fee.[4]

By no means, however, does the Constitution embody as a present requirement an egalitarian philosophy that supposes that all men can be put in exactly equal condition as to all matters involving the Government. As the learning cited by Judge Danaher indicates, a man cannot insist that his indigency establishes a constitutional right to drive a car without, *e. g.*, paying the cost of insurance required for the protection of

---

10. Hammond v. Hull, 76 U.S.App.D.C. 301, 303, 131 F.2d 23, 25 (1942), cert. denied, 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145 (1943); cf. Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 249, 96 F.2d 518, 521 (1938).

11. Compare Brenner v. Ebbert, 130 U.S. App.D.C. 168, 170, 398 F.2d 762, 764, cert. denied 393 U.S. 926, 89 S.Ct. 259, 21 L.Ed.2d 262 (1968).

12. Policy questions in this field are singularly the concern of Congress. United States v. Dubilier Condenser Corp., 289 U.S. 178, 198, 53 S.Ct. 554, 77 L.Ed. 1114 (1933).

13. His claim for money damages is frivolous. Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); Barr v. Matteo, 360 U.S. 564, 79 S.Ct.

1335, 3 L.Ed.2d 1434 (1959); Gregoire v. Biddle, 177 F.2d 579, 581 (2 Cir. 1949), cert. denied 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

1. Gideon v. Wainright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

2. Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

3. Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

4. On appeal from Boddie v. Connecticut, 286 F.Supp. 968 (D.Conn., 3-judge court, 1968), the Supreme Court noted probable jurisdiction, 395 U.S. 974, 89 S.Ct. 2138, 23 L.Ed.2d 763 (1969).

others,[5] or of safety devices and government inspection services.[6]

Drawing the line between what is constitutionally permitted and prohibited will be an ongoing process. I think it clear, however, that in the case of a fee required as an incident to the Government's processing a request for an award of a monopoly of commercial value, there is no "fundamental right" that carves a constitutional exception for the indigent.[7]

Wilkey, Circuit Judge, dissented and filed opinion.

---

5. Ex parte Poresky, 290 U.S. 30, 54 S. Ct. 3, 78 L.Ed. 152 (1933).

6. The validity of a driver's license fee was impliedly admitted in *Harper*, 383 U.S. at 668, 86 S.Ct. 1079.

7. It may be that even where some fees are permissible, an indigent could raise a separate constitutional question protesting an invidious and unnecessary hardship wrought by a fee requirement totally disproportionate to any justified state interest. It seems obvious that the statutory fees, less than $100 for petitioner, make only a modest payment toward the cost to the Government of processing patent applications. There is no contention before us to the contrary.